## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

CHARGE FUSION
TECHNOLOGIES, LLC

§
§
§
§
§
§
§
§
§
§
§
§

Plaintiff,

Case No. 6:21-cv-1078

v.

**JURY TRIAL DEMANDED**

TESLA, INC.,

Defendant.

### COMPLAINT FOR PATENT INFRINGEMENT

Charge Fusion Technologies, LLC ("Charge Fusion" or "Plaintiff"), by and through its attorneys, for its Complaint for patent infringement against Tesla, Incorporated ("Tesla" or "Defendant"), and demanding trial by jury, hereby alleges, on information and belief with regard to the Defendant's actions and on knowledge with regard to its own actions, as follows:

### I.      NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 271, *et seq.*, to enjoin and obtain damages resulting from Defendant's unauthorized use, sale, and offer to sell in the United States, of products, methods, processes, services and/or systems that infringe Plaintiff's United States patents, as described herein.

2.      Defendant manufactures, provides, uses, sells, offers for sale, imports, or distribute infringing products and services, and encourages others to use its products and services in an infringing manner, as set forth herein.

1

3.     Plaintiff seeks past and future damages, injunctive relief, and prejudgment and post-judgment interest for Defendant's infringement of the Asserted Patents, as defined below.

## II.     PARTIES

4.     Plaintiff Charge Fusion is a limited liability company organized and existing under the law of the State of Connecticut with its principal place of business located at 54 Danbury Road, Suite 302, Ridgefield, Connecticut 06877.

5.     Charge Fusion is the owner of the entire right, title, and interest of the Asserted Patents, as defined below.

6.     On information and belief, Tesla Incorporated is a corporation organized under the laws of the State of Delaware, having a principal place of business at 3500 Deer Creek Road, Palo Alto, California 94304.  Tesla may do business with the fictitious name Tesla Motors, Inc. all of which are referred to herein as "Tesla."  Tesla can be served with process through its registered agent in the State of Texas, CT Corporation, 1999 Byran Street, Suite 900, Dallas, Texas 75201-3136.

## III.     JURISDICTION AND VENUE

7.     This is an action for patent infringement that arises under the patent laws of the United States, in particular, 35 U.S.C. §§ 271 *et.seq.*

8.     This Court has exclusive jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

9.     This Court has personal jurisdiction over Tesla in this action because Tesla has committed acts within the Western District of Texas giving rise to this

action and has established minimum contacts with this forum such that the exercise of jurisdiction over Tesla would not offend traditional notions of fair play and substantial justice. Tesla, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), has committed and continues to commit acts of infringement in this District by, among other things, offering to sell and selling products and services that infringe the claims of the patents-in-suit. Moreover, Tesla actively directs its activities to customers located in the State of Texas.

10.    Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(d) and 1400(b) in the Tesla has transacted business in the Western District of Texas and has committed acts of direct and indirect infringement in the Western District of Texas. Tesla is registered to do business in the State of Texas, has offices in the State of Texas, and upon information and belief, has transacted business in the Western District of Texas and has committed acts of direct and indirect infringement in the Western District of Texas. For example, Tesla admits to creating its Model Y car at its Gigabit Factory located in the Western District of Texas. https://www.sec.gov/Archives/edgar/data/1318605/000156459021004599/tsla-10k_20201231.htm at 32.   Tesla maintains a regular and established place of business in the Western District of Texas, including the construction of a manufacturing facility on U.S. Route 79, located between the towns of Hutto and Taylor.  Tesla has also recently announced that it is moving its U.S. Headquarters to Austin, TX.    https://www.reuters.com/business/autos-transportation/tesla-moving-headquarters-austin-texas-says-ceo-musk-2021-10-07/.

## IV.    FACTS COMMON TO ALL COUNTS

11.    Charge Fusion adopts and incorporates the allegations of Paragraphs 1-10 above as if fully set forth herein.

12.    In 2008, Jeffrey Ambroziak and Carson Fincham set about to design and develop systems, methods and devices geared to improving the utility and efficiency of the then-fledgling electric car industry.  Many of their inventions were directed to control systems for enabling robust car charging encompassing both the cars and the charging stations.

13.    At the time, electric cars were a novelty and there existed little or no methodology or infrastructure to make the industry viable – certainly not on a widespread basis – there was simply insufficient charging availability and no managed charging systems.

14.    And so was born Charge Fusion Technologies, LLC.  Mr. Ambroziak and Mr. Fincham formed Charge Fusion to design, develop, market, sell and generally commercialize inventions in the electric car industry that were conceived by them.

15.    Mr. Ambroziak and Mr.  Fincham recognized the prior art shortcomings in that most of the charging systems were designed to work like gas-filling where you go to a station and wait.  Some companies looked at battery replacement.  But none of the existing solutions really addressed the specific operation of electric charging which is both much slower but also more widely accessible and flexible (i.e. scheduled charging).  So, Mr. Ambroziak and Mr. Fincham conceived and developed customized novel and ground-breaking solutions.

16. At the time of their invention, they were very much out in front in that there were no cars or charging stations in existence with the communication capabilities required to enable the envisioned functionality. Recognizing the importance of their novel and ground-breaking, they filed patent applications to cover their novel technology.

17. As Charge Fusion continued to develop technology and seek patent protection, they also sought to partner with an automotive manufacturer to produce electric cars exhibiting, for example, robust charging capabilities including scheduling, contactless charging, etc.

18. Alternatively, they sought the capital needed to create a business which would work with and serve the infant electric car industry.

19. Lacking an issued patent, Charge Fusion met with substantial challenges in their efforts to acquire the capital needed to build a business around their technology.

20. As with many inventions that represent a paradigm shift in conventional thinking, and given the novelty of their conceptions and inventions, and despite their diligent efforts, the United States Patent and Trademark Office ("USPTO") heavily scrutinized Charge Fusion's inventions and it took almost a decade to issue Charge Fusion its first patent.

**Charge Fusions' Patents & Applications Have
Been Cited by the USPTO Over 300 Times Including
an Anticipation Rejection Which Tesla Attempted to Traverse**

21.    The application that ultimately resulted in Charge Fusions Asserted Patents was first published on January 21, 2010 (US 2010/0017249 A1).  Since that time Charge Fusions published applications and patents have been cited over 300 times.

22.    In connection with almost 100 third party pending car and charge station patent applications, Charge Fusion's patents and applications have resulted in rejections pursuant to 35 U.S.C. §§ 102 & 103.

23.    Tesla has been on notice of Charge Fusion's '488 Patent since at least December 26, 2017, which is the date the '488 Patent was issued. On January 29, 2009, Kurt Russell Kelty and Scott Ira Kohn filed Patent Application 12/322,317 ("the '317 Application"). Kurt Kelly led the battery team for Tesla for 11 years, including at the time of filing this application. https://twitter.com/kurtkelty?lang=en. Scott Kohn worked at Tesla in 2009 and still works at Tesla to this day at the role of "Senior Director, Cell Development & Abuse Testing and Engineering. In or about February 2009, Mr. Kelty and Mr. Kohn assigned this application to Tesla. On or about January 25, 2010, Tesla utilized the '317 Application in connection with a security agreement.

24.    On June 24, 2011, in a non-final rejection Office Action, the USPTO rejected the '317 Application, stating that US2010/0017249 by Fincham ("Fincham"), the Application for the '488 Patent in this case, anticipated every claim element of original Claims 1-7. Original claims 8-15, 18, 20-23 of Tesla's 317 Application were

rendered obvious by Fincham in view of "Blewitt." On July 11, 2011, after analyzing the Fincham patent asserted in this case, Tesla amended its claims to the '317 Application to overcome the Fincham Application. On November 8, 2011, the '317 Application issued as U.S. Patent 8,054,038. On January 18, 2012, Tesla continued to leverage the issued '038 Patent, using it as a security. On August 19, 2020, Tesla Motors Inc, recorded the assignment, which assigned the rights to the '038 Patent to Tesla, Inc. This assignment was executed on February 1, 2017.

## IV. COUNTS OF PATENT INFRINGEMENT

25. Charge Fusion alleges that Tesla has infringed and continues to infringe the following United States patents (collectively, the "Asserted Patents"):

United States Patent No. 9,853,488 (the "'488 Patent") (Exhibit A)
United States Patent No. 10,819,135 (the "'135 Patent") (Exhibit B)
United States Patent No. 10,998,753 (the "'753 Patent") (Exhibit C)

### COUNT ONE
### INFRINGEMENT OF U.S. PATENT 9,853,488

26. Plaintiff incorporates by reference the allegations in all preceding paragraphs as if fully set forth herein.

27. The '488 Patent, entitled "SYSTEM AND METHODS FOR ELECTRIC VEHICLE CHARGING AND POWER MANAGEMENT" was filed on July 13, 2009, and claims priority to a provisional application filed on July 11, 2008 and issued on December 26, 2017.

28. Charge Fusion is the assignee and owner of all rights, title, and interest to the '488 Patent, including the right to recover for past infringements, and has the

legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

## Technical Description

29.     The '488 Patent discloses and claims various "systems and methods for electric vehicle charging and power management." Since the filing of the '488 Patent, improvements in battery technology have provided the potential of economically viable electric-powered modes of transportation including, but not limited to, automobiles, motorcycles, buses, etc. Col 1, lines 17-24. One oft cited drawback of such electrical vehicles was the need to plug them in regularly to replenish their electrical charge. *Id.* First, such charging will likely require more time than is typically required to fill up an automobile with a petroleum-based product.

30.     As a result, the owner of an electrical automobile must often times adhere to a schedule of charging that renders the automobile unusable for protracted stretches of time. Col. 1 at lines 24-30. In addition, there exists a resistance to performing the act of plugging in an automobile and subsequently unplugging the vehicle in order to maintain a charged vehicle.

31.     The '488 Patent provides a host of different technical solution to the prior art problems associated with charging electric cars and the charging station infrastructure as well as addressing range anxiety associated with those cars' relatively limited range when compared to vehicles that operated on fossil fuels

8

**Direct Infringement**

32.    Defendant, individually and collectively as a common business enterprise and without authorization or license from Charge Fusion, has been and is directly infringing the '488 Patent, either literally or equivalently, as infringement is defined by 35 U.S.C. § 271, including through making, using, importing, selling, and offering for sale electric cars and charging stations that infringe one or more claims of the '488 Patent. Tesla, individually and collectively as a common business enterprise, develops, designs, manufactures, sells, and distributes electric cars and charging stations that infringe one or more claims of the '488 Patent. Defendant further provides services, including, but not limited to, charging services that practice methods that infringe one or more claims of the '488 Patent. Defendant is thus liable for direct infringement pursuant to 35 U.S.C. § 271. Exemplary infringing products include, but are not limited to, Tesla cars such as the Model 3, Model S, Model X, Model Y and Roadster both alone, and in conjunction with associated charging stations ("Accused Tesla Cars").

33.    Charge Fusion names these exemplary infringing instrumentalities to serve as notice of Defendant's infringing acts, but Charge Fusion reserves the right to name additional infringing products, known to or learned by Charge Fusion or revealed during discovery, and include them in the definition of '488 Accused Products.

34.  Defendant is liable for direct infringement pursuant to 35 U.S.C. § 271 for the manufacture, sale, offer for sale, importation, or distribution of the Accused Tesla Cars along with their associated charging stations.

35.  The Accused Tesla Cars either alone, or on conjunction with their associated charging stations meet all limitations of at least Claim 13 of the '488 Patent, either literally or equivalently.

36.  The Accused Tesla Cars include electrical charging systems:



Fig. 1: Tesla Model 3 User's Manual, P. 131.

37.     The Accused Tesla Cars include electrical charging systems which comprises a vehicle sensor:

"Note: The onboard Global Positioning System (GPS) determines if you are driving in a region with right or left hand traffic. In situations where GPS data is unavailable (for example, if there is inadequate signal), engaging the turn signal near an exit does not cause Traffic- Aware Cruise Control to slow down Model 3."

Fig. 2: Tesla Model 3 User's Manual, P. 7.

"Autopark (if equipped) uses data from the ultrasonic sensors and GPS to simplify parking on public roads by maneuvering Model 3 into parallel and perpendicular parking spaces. See To Use Autopark on page 82."

Fig. 3: Tesla Model 3 User's Manual, P. 82.

"Charge Port Light • WHITE: The charge port door is open. Model 3 is ready to charge and the connector is not inserted, or the charge port latch is unlocked and the connector is ready to be removed. Note: In cold ambient temperatures below 41° F (5° C), the charge port remains unlocked whenever the vehicle is not charging. In these situations, the charge port light is white. • BLUE: Model 3 detects that a connector has been plugged in. • BLINKING BLUE: Model 3 is communicating with the connector. Either Model 3 is preparing to charge, or a charging session is scheduled to begin at a specified future time. • BLINKING GREEN: Charging is in progress. As Model 3 approaches a full charge, the frequency of the blinking slows. • SOLID GREEN: Charging is complete. • SOLID AMBER: The connector is not fully plugged in. Realign the connector to the charge port and insert fully. • BLINKING AMBER: Model 3 is charging at a reduced current (AC charging only). • RED: A fault is detected and charging has stopped. Check the touchscreen for a fault message." **Owner's Manual**

Fig. 4: Tesla Model 3 User's Manual, P. 125.

38.     The Accused Tesla Carsinclude electrical charging systems which comprises a communication device.



Fig. 5: Tesla Model 3 User's Manual, P. 2.

11



Fig. 6: Tesla Model 3 User's Manual, P. 4.

"To initiate a voice command, tap the microphone button on the touchscreen. When you hear the tone, speak your command. As you speak, the touchscreen displays an interpretation of your command. It also displays tips to remind you of the type of commands you can speak. When you finish speaking the  command, tap the voice button again or simply wait."

Fig. 7: Tesla Model 3 User's Manual, P. 119.

39.     The Accused Tesla Cars include electrical charging systems which comprises a processor in communication with the vehicle sensor:

"Note: The onboard Global Positioning System (GPS) determines if you are driving in a region with right or left hand traffic. In situations where GPS data is unavailable (for example, if there is inadequate signal), engaging the turn signal near an exit does not cause Traffic- Aware Cruise Control to slow down Model 3."

Fig. 8: Tesla Model 3 User's Manual, P. 7.

"Autopark (if equipped) uses data from the ultrasonic sensors and GPS to simplify parking on public roads by maneuvering Model 3 into parallel and perpendicular parking spaces. See To Use Autopark on page 82."

Fig. 9: Tesla Model 3 User's Manual, P. 82.

"Trip Planner (available in some market regions) helps you take longer road trips with confidence. If reaching your destination requires charging, Trip Planner routes you through the appropriate Supercharger locations. Trip Planner selects a route and provides charging times to minimize the amount of time you spend driving and charging. To enable Trip Planner, touch the map's settings icon (see Overview on page 108), then touch Trip Planner.)" **Owner's Manual, P. 108**

Fig. 10: Tesla Model 3 User's Manual, P. 108.

"Charge Port Light • WHITE: The charge port door is open. Model 3 is ready to charge and the connector is not inserted, or the charge port latch is unlocked and the connector is ready to be removed. Note: In cold ambient temperatures below 41° F (5° C), the charge port remains unlocked whenever the vehicle is not charging. In these situations, the charge port light is white. • BLUE: Model 3 detects that a connector has been plugged in. • BLINKING BLUE: Model 3 is communicating with the connector. Either Model 3 is preparing to charge, or a charging session is scheduled to begin at a specified future time. • BLINKING GREEN: Charging is in progress. As Model 3 approaches a full charge, the frequency of the blinking slows. • SOLID GREEN: Charging is complete. • SOLID AMBER: The connector is not fully plugged in. Realign the connector to the charge port and insert fully. • BLINKING AMBER: Model 3 is charging at a reduced current (AC charging only). • RED: A fault is detected and charging has stopped. Check the touchscreen for a fault message." **Owner's Manual**

Fig. 11: Tesla Model 3 User's Manual, P. 125.

40. The Accused Tesla Cars include electrical charging systems which comprises a processor in communication with the communication device:

"The features and information you need to drive Model 3 are displayed on the touchscreen. When driving, the touchscreen displays driving-related information such as driving speed, vehicle range, warnings, etc. The touchscreen is used to control many features that, in traditional cars, are controlled using physical buttons (for example, adjusting mirrors). You can also use the touchscreen to customize Model 3 to suit your preferences." **Owner's Manual P. 4**

Fig. 12: Tesla Model 3 User's Manual, P. 4.



Fig. 13: Tesla Model 3 User's Manual, P. 4.

"To enable Trip Planner, touch the map's settings icon (see Overview on page 103), then touch Trip Planner."

Fig. 14: Tesla Model 3 User's Manual, P. 106.

"If charging is needed to reach your destination and Trip Planner is enabled, the navigation route automatically includes Supercharger stops (see Trip Planner on page 106) and you may need to touch BEGIN TRIP to initiate navigation."

Fig. 15: Tesla Model 3 User's Manual, P. 106.

41.     The Accused Tesla Cars include electrical charging systems which comprises a memory in communication with the processor, the memory storing instructions that when executed by the processor cause the processor to receive, from the vehicle sensor, information indicative of a presence of a vehicle in a parking space:

"When driving slowly on a public road,monitor the touchscreen to determine when Autopark has detected a parking space. When Autopark detects a potential parking space, the touchscreen displays a parking icon. Autopark detects parallel parking locations when driving below 15 mph (24 km/h) and perpendicular parking locations when driving below 10 mph (16 km/h).."**Owner's Manual P. 82**

Fig. 16: Tesla Model 3 User's Manual, P. 82.



Fig. 17: Tesla Model 3 User's Manual, P. 82.

42.     The Accused Tesla Cars include electrical charging systems which comprises a memory in communication with the processor, the memory storing instructions that when executed by the processor cause the processor to receive, from the communication device, information indicative of one or more charging preferences

corresponding to a desired charging of the vehicle, wherein the one or more charging preferences are defined by an operator of the vehicle:

"Trip Planner (available in some market regions) helps you take longer road trips with confidence. If reaching your destination requires charging, Trip Planner routes you through the appropriate Supercharger locations. Trip Planner selects a route and provides charging times to minimize the amount of time you spend driving and charging. To enable Trip Planner, touch the map's settings icon (see Overview on page 108), then touch Trip Planner.)" **Owner's Manual P. 108**

Fig. 18: Tesla Model 3 User's Manual, P. 108.

"To remove Supercharger stops and display only directions, touch Remove charging stops at the bottom of the list of directions (if you remove charging stops, the turn-by-turn direction list may display an alert indicating that charging is needed to reach your destination). To add Supercharger stops to the directions, touch Add charging stops" **Owner's**

Fig. 19: Tesla Model 3 User's Manual, P. 108.



Fig. 20: https://www.youtube.com/watch?v=MSeC0F4tyFM at 2:32.

"Model 3 detects real-time traffic conditions and automatically adjusts the estimated driving and arrival times based on traffic. In situations where traffic conditions will delay your estimated time of arrival and an alternate route is available, the navigation system can reroute you to your destination. To turn this feature on or off, touch the map's settings icon (see Overview on page 108), then touch Online Routing. You can also specify the  minimum amount of minutes that must be saved before you are rerouted by touching the arrows associated with the Re-Route if it saves more than setting." **Owner's**

Fig. 21: Tesla Model 3 User's Manual, P. 111.

43.    The Accused Tesla Cars include electrical charging systems which comprises a memory in communication with the processor, the memory storing instructions that when executed by the processor cause the processor to determine,

15

based at least on the one or more charging preferences and at least one current value

of a dynamic attribute of an electric charge provider, a charging schedule for the

vehicle:

"When Trip Planner is enabled and charging is required to reach your destination, the turn-by-turn direction list includes Supercharger stops and a recommended charging time at each Supercharger, and an estimate of how much energy will be available when you arrive at the Supercharger." **Owner's Manual P. 111.**

Fig. 22: Tesla Model 3 User's Manual, P. 111.



Fig. 23: https://www.youtube.com/watch?v=MSeC0F4tyFM at 2:32.

"Trip Planner (available in some market regions) helps you take longer road trips with confidence. If reaching your destination requires charging, Trip Planner routes you through the appropriate Supercharger locations. Trip Planner selects a route and provides charging times to minimize the amount of time you spend driving and charging. To enable Trip Planner, touch the map's settings icon (see Overview on page 108), then touch Trip Planner." **Owner's Manual, P. 108**

Fig. 24: Tesla Model 3 User's Manual, P. 108.

"To remove Supercharger stops and display only directions, touch Remove charging stops at the bottom of the list of directions (if you remove charging stops, the turn-by-turn direction list may display an alert indicating that charging is needed to reach your destination). To add Supercharger stops to the directions, touch Add charging stops" **Owner's**

Fig. 25: Tesla Model 3 User's Manual, P. 108.

16

"Model 3 detects real-time traffic conditions and automatically adjusts the estimated driving and arrival times based on traffic. In situations where traffic conditions will delay your estimated time of arrival and an alternate route is available, the navigation system can reroute you to your destination. To turn this feature on or off, touch the map's settings icon (see Overview on page 108), then touch Online Routing. You can also specify the  minimum amount of minutes that must be saved before you are rerouted by touching the arrows associated with the Re-Route if it saves more than setting." **Owner's**

Fig. 26: Tesla Model 3 User's Manual, P. 111.

"Note: If a Supercharger located on your route experiences an outage, Trip Planner displays a notification and reroutes you to a different Supercharger location." **Owner's Manual P. 111-112**

Fig. 27: Tesla Model 3 User's Manual, P. 112.

"If you charge for a shorter or longer length of time, the charging time for subsequent Supercharger stops is adjusted."

Fig. 28: Tesla Model 3 User's Manual, P. 111.

"Model 3 detects real-time traffic conditions and automatically adjusts the estimated driving and arrival times based on traffic. In situations where traffic conditions will delay your estimated time of arrival and an alternate route is available, the navigation system can reroute you to your destination. To turn this feature on or off, touch the map's settings icon (see Overview on page 108), then touch Online Routing. You can also specify the minimum amount of minutes that must be saved before you are rerouted by touching the arrows associated with the Re-Route if it saves more than setting." **Owner's**

Fig. 29: Tesla Model 3 User's Manual, P. 111.

44.    The Accused Tesla Cars include electrical charging systems which comprises a memory in communication with the processor, the memory storing instructions that when executed by the processor cause the processor to cause a charging, in accordance with the charging schedule, of the vehicle:

"BLUE: Model 3 detects that a connector has been plugged in. • BLINKING BLUE: Model 3 is communicating with the connector. Either Model 3 is preparing to charge, or a charging session is scheduled to begin at a specified future time. • BLINKING GREEN: Charging is in progress. As Model 3 approaches a full charge, the frequency of the blinking slows. • SOLID GREEN: Charging is complete. • SOLID AMBER: The connector is not fully plugged in. Realign the connector to the charge port and insert fully. • BLINKING AMBER: Model 3 is charging at a reduced current (AC charging only). • RED: A fault is detected and charging has stopped. Check the touchscreen for a fault message." **Owner's Manual P. 125**

Fig. 30: Tesla Model 3 User's Manual, P. 125.

"Note: If Model 3 is charging and detects unexpected fluctuations in input power, the charging current is automatically reduced by 25%. For example, a 40 amp current is reduced to 30 amps. This automatic current reduction increases robustness and safety in situations when an external problem exists (for example, a home wiring system, receptacle, adapter or cord is unable to meet its rated current capacity). As a precaution, when Model 3 automatically reduces current, it saves the reduced current at the charging location. Although you can manually increase it, Tesla recommends charging at the lower current until the underlying problem is resolved and the charging location can provide consistent power." **Owner's**

Fig. 31: Tesla Model 3 User's Manual, P. 134.

17

### Indirect, Induced, and Contributory Infringement

45.    Tesla has induced and are knowingly inducing their dealers, customers, and end-users to directly infringe the claims of the '488 Patent, with the specific intent to induce acts constituting infringement, and knowing that the induced acts constitute patent infringement, either literally or equivalently.

46.    Tesla has knowingly contributed to direct infringement by their customers by having imported, sold, and offered for sale, and knowingly importing, selling, and offering to sell within the United States products covered by the claims of '488 Patent, including, but not limited to, the Accused Tesla Cars and the associated charging stations which are not suitable for substantial non-infringing use and which are especially made or especially adapted for use by its customers in an infringement of the asserted patent.

47.    Tesla's indirect infringement includes, for example, providing manuals, data sheets, technical guides, demonstrations, software and hardware specifications, and other forms of support including providing charging stations that induce their customers and end-users to directly infringe the claims of the '488 Patent.

48.    Tesla's indirect infringement additionally includes marketing its products and providing product specifications instructing its customers on infringing uses of the Accused Tesla Cars and the associated charging stations.  The '488 Accused Products are designed in such a way that when they are used for their intended purpose, the user infringes the claims of the '488 Patent, either literally or equivalently.  Tesla knows and intends those customers who purchase the '488

Accused Products will use those products and the charging stations for their intended purpose. Tesla's customers directly infringe the claims of the '137 patent when they follow Tesla's provided instructions.

49. Tesla knows following its instructions directly infringes claims of the '488 Patent and Tesla's customers who follow Tesla's provided instructions directly infringe the claims of the '488 Patent.

50. As a result of Tesla's infringement, Plaintiff has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement which, by law, can be no less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 US.C. § 284.

## COUNT TWO
## INFRINGEMENT OF U.S. PATENT 10,819,135

51. Plaintiff incorporates by reference the allegations in preceding paragraphs as if fully set forth herein.

52. The '135 Patent, entitled "SYSTEM AND METHODS FOR CHARGING ELECTRIC VEHICLES UTILIZING A TOUCH-SENSATIVE INTERFACE" was filed on December 20, 2017, and claims priority to a provisional application filed on July 11, 2008, and issued on October 27, 2020.

53. Plaintiff Charge Fusion is the assignee and owner of all rights, title, and interest to the '135 Patent, including the right to recover for past infringements, and has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

## Technical Description

54.     The '135 Patent discloses and claims "[s]ystems and methods for charging electric vehicles and for quantitative and qualitative load balancing of electrical demand[.]" '135 Patent, abstract.

55.     More specifically, the '135 Patent claims systems and methods including a mode of operation for determining and maintaining an interior temperature of an electric vehicle suitable for a pet located in the vehicle. *See e.g.,* '135 Patent, 29:37-40.

## Direct Infringement

56.     Tesla, individually and collectively as various common business enterprises and without authorization or license from Plaintiff, has been and is directly infringing the '135 Patent, either literally or equivalently, as infringement is defined by 35 U.S.C. § 271, including through making, using, importing, selling, and offering for sale electric cars and charging stations that infringe one of more claims of the '135 Patent. Defendant, individually and collectively as various business enterprises, develops, designs, manufactures, sells, and distributes electric cars and charging stations that infringe one or more claims of the '135 Patent. Defendant further provides services, including, but not limited to, charging services and charging stations that practice methods that infringe one or more claims of the '135 Patent. Defendants are thus liable for direct infringement pursuant to 35 U.S.C. § 271. Exemplary infringing products include, but are not limited to, Tesla cars such

as the Model 3, Model S, Model X, Model Y and Roadster both alone and in conjunction with associated charging stations ("Accused Tesla Cars").

57.    Plaintiff Charge Fusion names these exemplary infringing instrumentalities to serve as notice of Tesla's infringing acts, but Plaintiff reserves the right to name additional infringing products, known to or learned by Plaintiff or revealed during discovery, and include them in the definition of '135 Accused Products.

58.    Tesla is liable for direct infringement pursuant to 35 U.S.C. § 271 for the manufacture, sale, offer for sale, importation, or distribution of the Tesla Accused Cars either alone, or in conjunction with associated charging stations.

59.    As a result of Tesla's infringement, Charge Fusion has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement which, by law, can be no less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 US.C. § 284.

60.    The Accused Tesla Cars meet all limitations of at least Claim 1 of the '135 Patent, either literally or equivalently.

61.    The Accused Tesla Cars include a non-transitory computer readable storage medium storing instructions that, when executed by a processor.

62.    The Accused Tesla Cars include a non-transitory computer readable storage medium storing instructions that, when executed by a processor, cause the processor to retrieve from a memory storage device one or more electric charge parameters describing one or more electric charge parameters of an electric vehicle.

21

63.    The Accused Tesla Cars include a non-transitory computer readable storage medium storing instructions that, when executed by a processor, cause the processor to display via a user interface of a mobile device at least one of the one or more electric charge parameters wherein the user interface is adapted to display the one or more electric charge parameters as a vehicle charge indicator element comprising a first portion indicative of an amount of charge residing in a battery of the electric vehicle and a second portion indicative of an uncharged capacity of the battery of the electric vehicle and wherein the vehicle charge indicator element further comprises a slider by which an amount of charge may be specified:





"Adjust the charge limit by touching Set Limit, and drag the arrow to move the charge limit setting. The setting you choose applies to immediate and scheduled charging sessions."

Fig. 32:

https://www.tesla.com/sites/default/files/model_3_owners_manual_north_america_e

n.pdf at 183.

64.    The Accused Tesla Cars include a non-transitory computer readable storage medium storing instructions that, when executed by a processor, cause the processor to receive an amount of charge specified by the slider; commence charging of the electric vehicle in accordance with the received amount of charge:

"Adjust the charge limit by touching Set Limit, and drag the arrow to move the charge limit setting. The setting you choose applies to immediate and scheduled charging sessions."

Fig. 33:

https://www.tesla.com/sites/default/files/model_3_owners_manual_north_america_e

n.pdf at 183.

65.    The Accused Tesla Cars include a non-transitory computer readable storage medium storing instructions that, when executed by a processor, cause the processor to display via the user interface a visual indicia for selecting a mode of

operation of the electric vehicle the selected mode of operation operating to determine

and maintain an interior temperature of the electric vehicle suitable for a pet located

within the electric vehicle:

"Dog mode keeps your pet comfortable while also displaying the current cabin temperature on the touchscreen so people nearby are informed that your pet does not need to be rescued…. To operate Keep Climate On, Dog Mode, or Camp Mode: 1. Engage the Park gear. The Keep Climate On, Dog, and Camp settings are available only when Model 3 is in Park. 2. If necessary, adjust the climate settings. 3. Touch the fan icon then touch Keep Climate On, Dog, or Camp."

Fig. 34:

https://www.tesla.com/sites/default/files/model_3_owners_manual_north_america_e

n.pdf



Fig. 35: https://www.youtube.com/watch?v=tAxqDp2jA5M at 4:22

66.     The Accused Tesla Cars include a non-transitory computer readable

storage medium storing instructions that, when executed by a processor, cause the

processor to receive an indication of an activation of the selected mode of operation of

the electric vehicle:



Fig. 36: https://www.youtube.com/watch?v=tAxqDp2jA5M at 5:59

67.    The Accused Tesla Cars include a non-transitory computer readable storage medium storing instructions that, when executed by a processor, cause the processor to operate a climate control mechanism of the electric vehicle while the vehicle is in a parked state and in accordance with the selected mode of operation for a duration of time until the amount of charge residing in the battery reaches a predetermined level:

" If the owner is gone for long periods of time and the Model 3's battery goes below 20 percent, a push notification goes to the owner's phone to prompt them to get back to their pet."

Fig. 37: https://www.caranddriver.com/news/a29591859/how-tesla-dog-mode-works-model-3/

**COUNT THREE**
**INFRINGEMENT OF U.S. PATENT 10,998,753**

68.    Plaintiff incorporates by reference the allegations in preceding paragraphs as if fully set forth herein.

25

69.     The '753 Patent, entitled "SYSTEMS AND METHODS FOR CHARGING ELECTRIC VEHICLS" was filed on September 4, 2020, and claims priority to a provisional application filed on July 11, 2008 issued on May 4, 2021.

70.     Plaintiff Charge Fusion is the assignee and owner of all rights, title, and interest to the '753 Patent, including the right to recover for past infringements, and has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

### Technical Description

71.     The '753 Patent discloses and claims "[s]ystems and methods for charging electric vehicles and for quantitative and qualitative load balancing of electrical demand[.]" '753 Patent, abstract.

72.     The '753 Patent recognized that it may be advantageous to intelligently charge vehicles. 2:5-6.

73.     In some embodiments, for example, intelligent vehicle charging may comprise receiving (e.g., from a vehicle sensor) information indicative of a presence of a vehicle in a parking space. Intelligent charging may also or alternatively comprise receiving (e.g., from a communication device) information indicative of an identifier of the vehicle, determining, based at least on the information indicative of the identifier of the vehicle, a charging schedule for the vehicle, and/or charging, in accordance with the charging schedule, the vehicle. '753 Patent, 2:6-15

74.     The '753 Patent further recognizes that intelligent qualitative load balancing for electrical loads may comprise determining an electrical load that

26

requires electrical power, determining a plurality of available sources of electrical power, determining a characteristic of each of the plurality of available sources of power, selecting, based at least in part on the determined characteristics of the plurality of available sources of power, one or more of the available sources of power, and/or activating at least one of electrical switch to cause electrical power from the selected one or more of the available sources of power to be provided to the electrical load. '753 Patent, 2:32-45.

**Direct Infringement**

75.    Tesla, individually and collectively as various associated business enterprises and without authorization or license from Charge Fusion, has been and is directly infringing the claims of the '753 Patent, either literally or equivalently, as infringement is defined by 35 U.S.C. § 271, including through making, using, importing, selling, and offering for sale electric cars and charging stations that, either alone, or in conjunction with each other, infringe one or more claims of the '753 Patent. Tesla, individually and collectively as various common business enterprises, develops, designs, manufactures, sells, and distributes electric cars and charging stations that either alone, or in conjunction with each other, infringe one or more claims of the '753 Patent. Tesla further provides services, including, but not limited to, charge station services that practice methods that infringe one or more claims of the '753 Patent. Tesla is thus liable for direct infringement pursuant to 35 U.S.C. § 271.

76. Exemplary infringing products include, but are not limited to, Tesla cars such as the Model 3, Model S, Model X, Model Y and Roadster and all other substantially similar products, along with their associated charging stations ("Accused Tesla Cars").

77. Plaintiff Charge Fusion names these exemplary infringing instrumentalities to serve as notice of Tesla's infringing acts, but Plaintiff reserves the right to name additional infringing products, known to or learned by Plaintiff or revealed during discovery, and include them in the definition of '753 Accused Products.

78. Tesla is liable for direct infringement pursuant to 35 U.S.C. § 271 for the manufacture, sale, offer for sale, importation, or distribution of the Tesla Accused Cars either alone, or in conjunction with associated charging stations.

79. As a result of Tesla's infringement, Charge Fusion has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement which, by law, can be no less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 US.C. § 284.

80. As a result of Tesla's infringement, Charge Fusion has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement which, by law, can be no less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 US.C. § 284.

81.    The Accused Tesla Cars, either alone or in conjunction with the associated charging stations meet all limitations of at least Claim 6 of the '753 Patent, either literally or equivalently.

82.    The Accused Tesla Cars include electrical charging system which comprises one or more processing devices; and a non-transitory memory device in communication with the one or more processing devices, the non-transitory memory storing instructions that when executed by the one or more processing devices, result in receiving information indicative of a starting location of an electric vehicle:



Fig. 37: https://www.youtube.com/watch?v=7zWQF7Okv9A at 0:20

83.    The Accused Tesla Cars include electrical charging system which comprises one or more processing devices; and a non-transitory memory device in communication with the one or more processing devices, the non-transitory memory storing instructions that when executed by the one or more processing devices, result in receiving information indicative of a desired destination of the electric vehicle:



Fig. 38: https://www.youtube.com/watch?v=L5xgueba0F8&t=55s at 0:47

84.    The Accused Tesla Cars include electrical charging system which comprises one or more processing devices; and a non-transitory memory device in communication with the one or more processing devices, the non-transitory memory storing instructions that when executed by the one or more processing devices, result in receiving information indicative of a charging location of each of a plurality of electric charge providers:



Fig. 39: https://www.youtube.com/watch?v=L5xgueba0F8&t=55s at 0:12

85.    The Accused Tesla Cars include electrical charging system which comprises one or more processing devices; and a non-transitory memory device in communication with the one or more processing devices, the non-transitory memory storing instructions that when executed by the one or more processing devices, result in computing, based at least in part on the starting location, the desired destination, and the charging locations of one or more of the plurality of electric charge providers, a charging schedule for the electric vehicle the charging schedule comprising a scheduled start time and an indication of a scheduled stop time for charging the electric vehicle at each of one or more of the plurality of charging locations, wherein a first charging location is computed based, at least in part, on an ability of the electric vehicle to travel to the first charging location utilizing a charge amount stored in a battery of the electric vehicle:



Fig. 40: image of the Tesla car screen showing the computed charging schedule including the starting location, the desired destination and a plurality of electric charge providers along the computed route

86.     The Accused Tesla Cars include electrical charging system which comprises one or more processing devices; and a non-transitory memory device in communication with the one or more processing devices, the non-transitory memory storing instructions that when executed by the one or more processing devices, result in displaying a charging status of the electric vehicle via a graphical user interface forming a part of the electric vehicle:



Fig. 41: https://www.youtube.com/watch?v=7zWQF7Okv9A at 1:25

87.     The Accused Tesla Cars include electrical charging system which comprises one or more processing devices; and a non-transitory memory device in communication with the one or more processing devices, the non-transitory memory

32

storing instructions that when executed by the one or more processing devices, result in increasing, in accordance with the charging schedule, a level of charge of the battery of the electric vehicle.

88.    The Accused Tesla Cars include electrical charging system wherein the desired destination information is defined by a user of the electric vehicle via the graphical user interface adapted to display a vehicle charge indicator element comprising a first portion indicative of an amount of charge residing in a battery of the electric vehicle and a second portion indicative of an uncharged capacity of the battery of the electric vehicle and wherein the vehicle charge indicator element further comprises a slider by which an amount of charge may be specified:



Fig. 42: The destination was defined via a driver touching the GUI of the Tesla car screen to indicate a location in southern Florida.



Fig. 43: Tesla car screen displaying a graphic showing both charge level and

uncharged capacity.

## V.    NOTICE

89.    Charge Fusion has complied with the notice requirement of 35 U.S.C. § 287.  This notice requirement has been complied with by all relevant persons at all relevant times.

## VI.    JURY DEMAND

90.    Charge Fusion demands a trial by jury of all matters to which it is entitled to trial by jury, pursuant to FED. R. CIV. P. 38.

## VII.    PRAYER FOR RELIEF

WHEREFORE, plaintiff Charge Fusion Technologies, LLC prays for judgment in its favor and seeks relief against defendant Tesla, Incorporated as follows:

A.    That the Court determine that one or more claims of the Asserted Patents is infringed by Defendant, both literally and under the doctrine of equivalents;

34

B.    That the Court determine that one or more claims of the Asserted Patents is indirectly infringed by Defendant;

C.    That the Court determine that Plaintiffs have been irreparably harmed by Defendant's infringing activities and are likely to continue to be irreparably harmed by Defendant's continued infringement;

D.    That the Court award damages adequate to compensate Charge Fusion for the patent infringement that has occurred, together with prejudgment and post-judgment interest and costs, and an ongoing royalty for continued infringement;

E.    That the Court preliminarily and permanently enjoin Tesla pursuant to 35 U.S.C. § 283;

F.    That the Court award reasonable attorneys' fees; and

G.    That the Court award such other relief to Charge Fusion as the Court deems just and proper.

Dated: October 15, 2021                    Respectfully Submitted,

/s/ Bradley D. Liddle
Bradley D. Liddle
bliddle@carterarnett.com
Texas Bar No. 24074599
Michael Pomeroy
mpomeroy@carterarnett.com
Texas Bar No.  24098952
Theresa Dawson
Texas Bar No. 24065128
tdawson@carterarnett.com
Nathan Cox
ncox@carterarnett.com
Texas Bar No. 24105751

CARTER ARNETT PLLC
8150 N. Central Expy, 5th Floor
Dallas, Texas 75206
Telephone No. (214) 550-8188
Facsimile No. (214) 550-8185

Frederick A. Tecce (By Pro Hac)
fred.tecce@altimaadvisors.com
Pennsylvania Bar Number 47298
Altima Advisors/Attorneys, LLC
One Liberty Place – 55th Floor
1650 Market Street
Philadelphia, Pennsylvania 19103
Telephone No. (215) 268-7525
Facsimile No. (215) 268-7526

**ATTORNEYS FOR PLAINTIFF
CHARGE FUSION
TECHNOLOGIES, LLC**